# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONA N. ARABI, M.D., and MONA ARABI, MD, PA, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 18-0055 ) |
| VIGILANCE ANAESTHESIA GROUP L.L.C., *et al.*, | ) ) ) Judge Cathy Bissoon |
| Defendants. | ) ) ) ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court upon a Partial Motion to Dismiss filed by Defendants Vigilance Anesthesia Group L.L.C. ("Vigilance Anesthesia Group"), Vigilance Anesthesia Associates, Inc. ("Vigilance Anesthesia Associates"), and P. Robert Lara ("Lara") (collectively, "Defendants") (Doc. 12). For the reasons that follow, Defendants' Motion will be denied.

**I.      Factual Background**

Plaintiff Mona N. Arabi, M.D. ("Dr. Arabi") is a licensed anesthesiologist who resides in Dearborn, Michigan. Compl. (ECF No. 1) ¶ 8. Plaintiff operates a professional corporation, Mona Arabi MD, PA ("Arabi MD PA" and, collectively with Dr. Arabi, "Plaintiffs"), through which he provides medical services, including anesthesiology. Id. ¶¶ 2, 9. Lara, an Ohio resident, conducts business as the Executive Director of Vigilance Anesthesia Group and the "Executive Director and Administrator" of Vigilance Anesthesia Associates. Id. ¶¶ 5, 10-11. Both Vigilance Anesthesia Group and Vigilance Anesthesia Associates, to the extent that they exist as separate entities, are in the business of supplying medical practitioners, including anesthesiologists, to hospitals, health care facilities, and health care providers. Id. ¶ 10-11.

On or about October 17, 2017, Plaintiffs entered into a purported Subcontractor Agreement with Vigilance Anesthesia Group, Vigilance Anesthesia Associates, and/or Lara pursuant to which Plaintiffs agreed to provide anesthesiology services at several hospitals in western Pennsylvania for a period of three years. Id. ¶¶ 13-14. Although the agreement was styled as a "Vigilance Anesthesia Group, LLC Subcontractor Agreement," the document was executed by Lara as the Executive Director and Administrator of Vigilance Anesthesia Associates. Subcontractor Agreement (ECF No. 1-1) at 2. It is unclear as to whether Vigilance Anesthesia Group and Vigilance Anesthesia Associates are separate entities. Compl. ¶¶ 3-4.

After signing the agreement, Dr. Arabi relocated to Erie, Pennsylvania, and began providing anesthesiology services to Millcreek Community Hospital, Delmont Surgery Center, and Shady Side Surgery Center. Id. ¶ 14. Between October 17, 2017 and January 4, 2018, Dr. Arabi provided anesthesiology services entitling him to $128,700.00 in compensation. Id. ¶ 16. However, the only two payments that he received from Defendants during this time amounted to $43,000.00. Id. ¶ 18. Although Dr. Arabi, through counsel, attempted to contact Vigilance Anesthesia Group on several occasions to obtain an explanation for the inadequate payments, he received no explanation or response. Id. ¶¶ 16, 19, 20-21. Instead, Defendants terminated the purported Subcontractor Agreement on January 5, 2018. Id. ¶ 24. Plaintiffs responded by filing the instant lawsuit.

**II.    Analysis**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded

facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

The primary basis for Defendants' motion is their contention that Plaintiffs' claim for fraud and misrepresentation (Count IV) must be dismissed pursuant to the "gist of the action" doctrine. The gist of the action doctrine "maintain[s] the conceptual distinction between breach of contract claims and tort claims by precluding plaintiffs from recasting ordinary breach of contract claim into tort claims." Williams v. Hilton Grp. PLC, 93 Fed. Appx. 384, 386 (3d Cir. 2004). Pursuant to the doctrine, "an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014) (footnotes omitted). Defendants maintain that, because all of Plaintiffs' injuries in the instant case stem from a purported breach of the Subcontractor Agreement, Plaintiffs cannot maintain a separate tort claim for fraud or misrepresentation.

There is no question that Plaintiffs' Complaint contains contract and tort claims based on the same alleged misconduct. However, courts in Pennsylvania have frequently cautioned against "prematurely dismissing a tort action on the basis of [the gist of the action] doctrine" because "[civil procedure] rules permit the pleading of tort and contract claims in the alternative." Weinar v. Lex, 176 A.3d 907, 926 (Pa. Super. Ct. 2017). This type of alternative pleading is particularly appropriate where "the validity of the [contract] will become an issue during the pendency of [the] action." Patel v. Patel, 2018 WL 3642417, at *7 (E.D. Pa. Aug. 1, 2018) (collecting cases).

In the instant case, Plaintiffs have raised several factual issues with respect to the validity of the Subcontractor Agreement based on Lara's execution of the agreement on behalf of an entity that does not appear to have been otherwise named in the agreement. Whether this discrepancy has any legal significance with respect to the validity of the Subcontractor Agreement is an issue that requires factual development through discovery. Consequently, it would be premature to dismiss Plaintiffs' tort claims for fraud and misrepresentation at this time. Patel, 2018 WL 3642417, at *8 ("Since it appears that there may be issues with respect to the validity of the Agreement, we decline, at this time, to dismiss Plaintiff's conversion claim . . . pursuant to the gist of the action doctrine."); Mill Run Assoc. v. Locke Prop. Co., Inc., 282 F.Supp.2d 278, 290-91 (E.D. Pa. 2003) (denying a motion to dismiss based on the gist of the action doctrine because it was unclear, at that preliminary stage in the proceedings, "whether the 'gist' of the action sounds in contract or tort, particularly as one of the primary issues between the parties is whether the Agreement . . . existed between the parties"). Defendants' Motion to Dismiss Count IV of the Complaint will be denied.

Defendants next maintain that Plaintiffs have failed to state any claim for relief against Lara as an individual. Defendants contend that there are no allegations in the Complaint that Lara ever acted as anything other than an agent of Vigilance Anesthesia Group or Vigilance Anesthesia Associates. Defendants note that "[a]n authorized agent for a disclosed principal, in the absence of circumstances showing that personal responsibility was incurred, is not personally liable to the other contracting party." Poulos v. Nicolaides, 241 Fed. Appx. 25, 27 (3d Cir. 2007). Based on this principal, Defendants conclude Lara cannot be individually liable to Plaintiffs for any purported breach of the Subcontractor Agreement and must be dismissed from this action.

Defendants' argument overlooks the fact that Lara has been explicitly sued in his individual capacity for his own actions, rather than simply as an agent of Vigilance Anesthesia Associates.  As noted by Plaintiffs, there are fair questions raised in the Complaint concerning whether Vigilance Anesthesia Associates and Vigilance Anesthesia Group are the same or separate entities, and whether the latter, if it exists, is a corporate entity that has any separate legal identity apart from Lara as an individual.  Moreover, should Plaintiffs' fraud claim ultimately survive summary judgment, it is well-established that an agent has individual liability for his own fraud or misrepresentations perpetrated on a third party.  Roberts v. Estate of Barbagallo, 531 A.2d 1125, 1130 (Pa. Super. Ct. 1987).  For each of these reasons, it would be premature to dismiss Lara from this action until the extent of his individual activities and the validity of the Subcontractor Agreement can be explored through discovery.

### III.     Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. 12) is DENIED.


IT IS SO ORDERED.


August 31, 2018                                            s/ Cathy Bissoon
                                                                                  Cathy Bissoon
                                                                                 United States District Judge


cc (via ECF email notification):

All counsel of record